versus, okay, United States versus. Your Honor, United States versus Pedro Arrelucea-Zamudio. Good morning, Your Honors. My name is Maggie Moy. I'm the Assistant Federal Public Defender, and I represent the defendant appellant Pedro Arrelucea-Zamudio in this matter. Your Honor, I would ask to- Can we call it AZ, which is what we've been doing in my chambers? Say that again? We can call it AZ. AZ? Which is what we've been doing. I tend to call it AZ. We can call him Mr. Arrelucea because he does not normally use the formal full name. Your Honor, I would respectfully request to reserve three minutes for rebuttal. As granted. Thank you. This is a hot issue, so go at it. It is a hot issue. I think I personally have about five cases pending right now. I have at least one other matter before this Court, and I have two matters before this Court. Your Honor, is a possible way to look at this, and I know we've got a pre-Kimbrough decision on record Vargas in 2007. Is a possible way to look at this is in the context of the Gunter factors, the three Gunter factors. As you know, step one is the calculation of the sentencing guidelines. Step two is whether you grant any departures if they're requested, and step three is the What if we were to say that in a non-fast-track district at step one, you're not free to calculate the sentencing guidelines with the possibility of putting in up to a four-level downward calculation, but at step three a judge can have, as Kimbrough says, concerns about that, and also relate it to how one deals with the individual, and therefore while what Vargas said at step, that it is warranted to have a fast-track or non-fast-track district, but that we would clarify and say that Vargas applies at step one, but clearly, but not step three. Would that make sense? It would make sense, Your Honor. I think that at least what we've been trying to do, whether effectively or not, is to raise the fast-track issue as a third-step variance issue, and that the issue that we've raised is that the district court erred when it ruled as a matter of law, that the court was prohibited from considering it as a variance issue as a step three issue. So when you say in your brief, quote, this panel has both the discretion and duty to reconsider the holding of Vargas because the Supreme Court's decision in Kimbrough invalidates this court's previous analysis of the fast-track issue, am I understanding you to say that we don't actually have to invalidate Vargas in order to get to where you want to get? If we clarify it. If we clarify it, yes. I don't think you have to overrule Vargas because that is what in fact what we're seeking is clarification in terms of whether this is an argument that can be made as a variant at the third step. Now, only the holding of Vargas, as I read it, is that any sentencing disparity authorized under an act of Congress cannot be considered unwarranted under 3553A6. That's still perfectly sound even by what you want to do, isn't it? I mean, it's not that, it doesn't say that a court can't, as Judge Ambrose says, at step three consider a variance. It just says that if you're looking at 3553A6, you can't say that disparities that Congress has approved are ipso facto unwarranted. Correct. I don't know that Vargas necessarily said that. I do think that if we're parsing the language very carefully because then you're also running into the problem in front of the district court, you're in essence, you are raising the fast track disparity, whether you're saying it's the absence of the fast track in a particular district or the resulting disparity that we submit that the analysis in Vargas, I guess as applied, that it's prohibited is based on. It's been applied in a lot of ways that are contrary, but we're trying to do is clarify things. Correct. That since it's our position, the Protect Act does not in fact have any implicit directive from Congress that this disparity must exist, that it's in some way mandated. Certainly it may exist as any disparity may exist on a case by case basis when the district court weighs all the 3553A factors. The question is whether the court consider this on the third step as a factor in granting a variance. Answer, if you would, the argument made by the government and which comes out of the Ninth Circuit's opinion on this, Gonzalo Zaletto, that, and I'll quote from that case, although Kimbrough permits district courts to vary from the guideline ranges based solely on policy considerations, including disagreements with the guidelines, it does not address the district court's ability to vary from the guidelines based on disagreement with congressional policy, the situation we confront here. In short, the Ninth Circuit saying the Protect Act evidences a congressional policy, not simply a sentencing commission policy statement, and therefore it's a different animal. What's your response to that? It is not a different animal. That in determining whether this is congressional policy, I would suggest to the court that you have to look to the statute and, in fact, both the Protect Act, the language in the Protect Act and the language in the policy statement are identical, which are that it directs the sentencing commission to promulgate a policy statement authorizing a downward departure of not more than four levels if the government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney General. Actually, the policy statement probably helps you at step three, does it not? Because the policy statement of the sentencing commission is, we've got some concerns here. Correct. The Third Circuit in 2003 specifically said there's going to be two different issues. One, there's going to certainly be a geographic disparity, which is unanswered, and there's also going to be the natural instinct of district courts who are going to, in fact, apply variances due to the absence of it. That's the sentencing commission. Go back to the Protect Act and tell me what's wrong with the Ninth Circuit's reasoning and with your opponent's reasoning when they assert, wait a second, we're talking about Congress weighing in itself here and that makes this different from Kimbrough. You were explaining why that's fallacious reasoning. The only limitation that Congress expressly indicated in the Protect Act is that the departure be not more than four levels. It did, Congress did not indicate, Congress allowed jurisdictions to adopt it, but they did nothing other than say it can't be more than four levels. There is nothing in the Protect Act, in the language of Congress. And that is up to the Attorney General. I mean, that's also in there. Correct. But there's nothing that forbids district courts from exercising their discretion to vary or depart from the guidelines based on this resulting disparity or absence of a program. And Congress knows how, when they intend to give direction to the courts, either by mandatory minimums or in other express directives as to how guidelines should be initiated. They know how to do that. They did not do that in this case. And that's what Kimbrough talks about. Well, your opponent would say, I'm sure they'll be speaking for themselves, that when you say, by the Attorney General, that that's the point, that Congress has said this is an executive branch decision. And for the judiciary to weigh in is in direct contravention of that judgment by Congress of who should be making that determination of how to handle the disparity. What's the answer to that? I think there's two answers. First of all, Congress clearly could have said, only in those districts were it's authorized. And it did not. And that would be clear intent of Congress. And the other thing is that even when the Attorney General authorizes a program and implements a program, and there is always the opportunity for a sentencing court to say, I am not going to follow your recommendation. Good. I'm glad you got to the sentencing court. What do we do in this case with the fact that the district court expressly stated that no combination of factors would justify a variance? I mean... Well, that was after the court had already ruled as a matter of law that the court could not consider that. So the court had already taken that off the table. And that was simply not something that the court expressly said, that is not a basis for me to consider. And so... But the reasons given for a variance in this case are those that have been expressly rejected by court after court, you know, the desire to educate his children, et cetera. We see that all the time. Is there anything in this case that would indicate that he's entitled to a variance? That he should get it? I don't... That he would get it? Actually... I'm not asking... I don't think that this court can... Can I just add on to that? Because it really, that's a good question. That really dovetails with, what does he need to show to qualify at step three for a fast track disparity consideration and therefore a variance? And let me put on to that. Yeah. He hasn't shown any statistics that would show that aliens in fast track districts have any difference in what happens in their sentences than aliens in non-fast track districts. Well, Your Honor, let me just try to briefly say the things that we believe we did on the record and also then follow up. First of all, it's clear from the record that Mr. Aralucia offered to waive all of his appeal rights in return for a plea agreement that gave him a fast track disparity departure. But he's not in a fast track... I understand that. Well, in that case, it would have been basically, it would have been a 5K 2.0. That request was denied by the government. And the government hasn't moved and we can't make the government move. I understand that. But in terms of the showing that he's made, that he did that, he also at sentencing set forth what his guidelines range would have been. At sentencing, the government conceded that he would have qualified for fast track. The only issue that they raised was the fact that that was not a quick guilty plea. But again, that has due to the fact that there was a delay between his initial appearance and his guilty plea. However, those were joint requests between counsel. Those are the normal case law management issues. But those are not issues that come to us. We don't decide whether he's entitled to a variance or not. We're not asking the court to determine whether he's entitled. We're asking this court to remand this to the district court for clarification to allow the argument to be made to the district court... That he could be eligible for a variance at step three. Yes, that he could be eligible. And I think Judge Sloboda and I are to some extent asking the same question. What does he need to show? At the district court level? I guess I would... On the facts of this... I mean, we're talking about... We're not talking about a law school issue. We're talking about the facts of this case. Right. Your Honor, other than the fact... I mean, he was deported and he came back on drugs and he came back again. He did it again. Your Honor, I would submit to the court that if the court feels that this record is insufficient below, that we would request that the court give us the opportunity to supplement it, remand it for supplementing. I'm sure that you put it all in the record. Well, part of the problem is that the reason this issue is coming back before the court is that it is not clear... Maybe my question is a little more general. What are some of the things you would need to show that the calculation that isn't given to four levels down, up to the four levels down, should be considered here at step three, the actual sentencing, where the judge has, as we know, under Apprendi, Booker, et al., and especially Kimbrough, a great, great deal of discretion? That individuals... And we believe that in the Ninth Circuit case, where an individual who qualified for fast track with two armed robberies and was charged with the same offense qualified for a fast track 30-month program, Mr. Aralucia does not have any crimes of violence on his record. He has drugs. He has drugs. He has street-level drugs. I'm not trying to submit that they are non-serious matters, but they are not great. Well, I don't know. It's probably the court has... They're at least, at most, as serious as two armed robberies. You know, three circuits have held that the district courts may not consider fast track disparity. You want us to go in a different way. And you had First Circuit going the other way. First Circuit's gone the other way. I would note that the... But the Fifth, the Eleventh, and the Ninth. Yes, but the Eleventh Circuit, while did not abrogate their previous panel's ruling, not based on the fact that they addressed Kimbrough directly, rather they had a somewhat different reason for not abrogating in light of it. Although the Fifth appears to be saying at Step 3 that the court cannot consider. Correct. We believe that the Fifth and the Ninth Circuit are wrong, and that we would ask this court that under Kimbrough, and I would submit that Kimbrough, especially in light of the Supreme Court's clear rebuke in Spears, that Kimbrough is not to be read narrowly. It should be read broadly. Judge Stewart has a question. I don't want to beat this, but I'm not sure I have your answer clear in my own mind to the question that had been pressed, which is, what is it you'd have to show? You know, we've had non-precedential opinions, which we're all very careful not to cite. But... Judge Garth's recent opinion... Take 15 steps back and punt.  There's a case which shall remain nameless, Raina. Which you sent to us. I did not. The government. Sure. That's right. It didn't come out your way. But in these instances, there's been a concern that the defendant has not shown how it would have come out differently if the person had been in a fast-track setting. In other words, all there was was a sweeping generalization and nothing that said, look, in fast-track jurisdictions, guys that have three previous drug convictions, they get 30 months, you gave me 60 months, and have some evidence. So do you agree or disagree that if you even got what you wanted, you'd have to come forward with something like that? I agree that we could have made a better record. I would submit that a better resolution of this case, if that is the issue, is to remand this for more further clarification and supplementation at the district court level because this issue raises again and again. And I would submit respectfully that these cases that we're not mentioning have failed to give us direction, have failed to give the district court direction. We'll hear from you on the rebuttal. Thank you, Your Honor. We'll hear from the government. Good morning. May it please the court. Jennifer Chin on behalf of APOEA of the United States. Ms. Chin, you're not from ICE. You're from the U.S. Attorney's Office, right? U.S. Attorney's Office. Okay. You might fix the mics so we can hear you. Thanks. Okay. What do you think of the possibility of the analysis suggestion that I had made to your opponent? Your question with respect to whether this analysis can be done at step three of the sentencing? Correct. As the author of them, too. I think that, you know, assuming for a moment, and I know that my adversary obviously contests this, but assuming that Vargas remains good law, I think that it prevents that analysis from happening at step three. Why? Why is that? Because the variance has to be tied to one of the 3553A factors, and the one identified. Well, the court could say at step three that I am taking into consideration, I think it's warranted in this case to take into consideration that there is a disparity between fast-track and non-fast-track districts. And it appears from Kimbrough, when I look at what Justice Ginsburg wrote, a district judge must include the guidelines range in the array of factors warranting consideration. That sounds like step one. The judge may determine, however, that in the particular case, a within-guideline sentence is greater than necessary to serve the objectives of sentencing. That sounds like step three. I mean, I think that in the case of fast-track, there are two possibilities, two factors where this could come into play. The one that opposing counsel identifies, which is the unwarranted sentencing disparity, and then the one, Judge Amber, that you identified. Yeah. I mean, part of the problem, I think that people – I'm sorry. I apologize. Go ahead. Did you finish your answer? No, I didn't. Go right ahead. I apologize. Thank you. I think Vargas forecloses the possibility that 3553A6 is a basis for a variance based on fast-track sentencing disparities because what Vargas says is that Congress authorized these types of programs and for certain reasons to deal with these very exceptional circumstances in certain jurisdictions that have heavy caseloads of immigration cases. And for that reason – Vargas does not say – Wait a minute. Let her finish her answer. Please, go ahead. And for that reason, it cannot be considered an unwarranted disparity. It's a warranted disparity. Okay. Does Vargas say you cannot take fast-track disparities into account? Or does Vargas say, actually, in its holding, we will not say a sentence is unreasonable because it declines to take the fast-track disparity into account? Isn't the latter the holding of Vargas? I wouldn't agree with that. But I think that what Vargas does say is that given – Give us the language you're relying on. There's certainly language in there that says Congress has said these disparities are – that this is a warranted disparity. But where does it say that that means that a court could never vary if it decided that in a particular case, variance based on a fast-track disparity was in order? I'm looking here. There's two places you might look. Take a look on page 99. I was looking at 100. Okay. And this is where the – this court says, quote, what are prohibited under 3553 are unwarranted sentencing disparities. And I think the other two branches of government, the legislative and executive, have made it clear that in their view these are warranted sentencing disparities. That is, we agree that any sentencing disparity authorized through an act of Congress cannot be considered unwarranted under 3553A6. And I think that that would be the language that to me suggests that Vargas is setting out quite clearly that because Congress decided that fast-track programs would be established in certain jurisdictions and not in others, it knew and intended that there would be sentencing disparities. But when you look – I think Judge Jordan is asking a very nuanced question, and that is that when you look at the holding of the court – this dates it twice, but I'm looking at page 99 – we hold that a – it's in the bottom right – that a district court's refusal to adjust a sentence to compensate for the absence of a fast-track program does not make a sentence unreasonable. And you might want to add ipso facto unreasonable. What's necessarily wrong with that? It doesn't necessarily make it unreasonable. It just means if we say the court has the ability to consider somebody eligible at Step 3 for a variance, but that judge may decide that it's just not called for in the particular case, which is – will lead to our later set of questions, is what should you need to prove in order to have it called for? And that is a more flexible reading of Vargas than the one – Well, it would be a clarification. Some people have read it – you know, we've had it all over the ballpark, but at this point we're taking us on because we think at some point we need to lay something down so that we're not coming across to district courts as not even a Delphic Oracle, just something quite murky and opaque. And I think the one way to sort of cabin this in is to link it to the 3550 factors themselves and to ask which of those would permit a variance based on the sentencing – Well, it's pretty clear under Kimbrough. I mean, you know, you may disagree or agree with the 100 to 1 crack versus cocaine guideline ratio, but as the court said, even in the, quote, mine run case, even in the typical case, you're free at Step 3 to say I have a problem with that. But in this case, it seems like it's the same analysis. And if that's correct, the court can consider this at Step 3, then the question is what are some of the things you would suggest that we put in an opinion that the court should consider as the things needed to show that the disparity between fast and non-fast-track districts should be taken into account in this particular case. I'll just give you an example. District in Nevada is a fast-track district. It has 11 percent of its cases are immigration sentencing. The District of Northern Florida has 22 percent sentencing for immigration cases, and yet it is not fast-tracked. Could a court take that into account and say, I've got some concerns with how the fast-track system is proceeding at Step 3? In which district? Florida? Northern District of Florida. No, I mean in which district is your hypothetical court? It would be, let's say, Eastern District of Pennsylvania. So we would be comparing? I mean, in other words, if the court took those statistics into account, would that be a possibility that a court could say, okay, as a result of this, because of what's going on in the country, I don't think that I should follow the sentencing guideline calculation at Step 1 necessarily until we get things sorted out and more uniformity in the system with regard to those districts that really need fast-track versus those districts that don't. And I think this goes perhaps to the part of the analysis and the part of our argument where we say that there was no showing in this case or no offer. Well, but the question is, did the district court decide as a matter of law that it couldn't take that? I mean, leave aside the showing. If the district court decided that as a matter of law it couldn't take that into consideration, then you have to go back to Judge Ambrose's question. And remember, I'm not saying that this would be a holding of us if we were to go that way. It would just be in order to help district judges who are doing the difficult job of sentencing, these might be some of the considerations, some examples of what you might take into account. And in this hypothetical, we're assuming that as a matter of law, the district court is permitted. No, I think that's what the district court held here, isn't it? That is right, yes. And that's the government's position? That's correct. Yeah, but for purposes of Judge Ambrose's question, which I'm interested to hear the answer to, yes. Assume that we were to say, yeah, you could take that into account. Because of Kimbrough. Yeah. What would you, from the government's perspective, insist on defendants coming forward with in order to justify a variance? Well, in terms of the non-precedential opinions that have come out so far and spoken to that part of the analysis, I mean, I think the only guidance we have so far is that there can't be broad allegations and generalizations that a defendant in a non-fast-track jurisdiction is similarly situated to a defendant in a fast-track jurisdiction. So you're saying that the defendant would have to come forward with specifics? I think there would have to be. Statistically significant statistics. Absolutely. I mean, I think it would. You want to try it? Statistically significant showing, yes, I would agree. That there would have to be some kind of statistical analysis that would compare defendants who have been convicted of similar crimes and are getting certain sentences and some kind of comparison along those lines. Let me ask if I could for you to, I assume you like what the Ninth and the Fifth and the Eleventh Circuit did in saying that, wait, this is congressionally mandated policy under the PROTECT Act, and therefore it's different from Kimbrough, different from Spears. If I'm right about that, that that's something you support, how do you address the comparison made by the First Circuit when it says, look, fast-track is really just like crack powder disparity. It's an example of where somebody came in, took the Sentencing Commission out of its traditional role, told them to do something instead of letting them do it, a data analysis gathering to find a heartland, and instructed them to do X. And therefore, we're really in a circumstance that's just like crack powder. Therefore, in this instance, you can give less deference to the guidelines. You're free to do what was instructed in Kimbrough and Spears. What's the response to that First Circuit kind of analysis? Well, I think I'd like to respond to your question in two parts. And one is with respect to what you were saying regarding the Fifth, Ninth, and Eleventh Circuit decisions. To the extent that those decisions can be read more broadly for the proposition that a district court is bound by congressional policy in this area, I don't necessarily think that we need to go that far here. I think that the argument that we advance is that because Congress determined that fast-track programs should be established in certain jurisdictions in order to address extraordinary circumstances, any resulting disparities in sentences cannot be considered unwarranted. They were expected and anticipated and a result of the PROTECT Act. With respect to the second part of your question, you can read the First Circuit decision, and I think you could read Spears and Kimbrough to be saying that if the Sentencing Commission is taken out of its traditional role, its institutional role of gathering data about sentencing and trying to understand what's a sort of a heartland for sentencing. And instead, that role is overridden by, for example, one might argue, the PROTECT Act saying, we're going to have fast-track districts, it's okay. That the institutional reason and the rationale for giving great deference to the guidelines is removed. And so even in the mine run of cases, a district court is free purely on a policy basis to disagree. Now, that's what Kimbrough and Spears say about crack powder. That's what the First Circuit seems to be saying is also the case with fast-track. I'm asking you to take that rationale on and tell me why it's wrong. Well, I think that the First Circuit reads Kimbrough quite and Spears as broadly as possible to say that the crack cocaine situation, which is a very unique situation, and the reasoning of Spears and Kimbrough can be applied to all sorts of congressional policies the district court may disagree with. And I think the fast-track context is quite different from that. How is it different on that point? Because of Congress? Yeah, what's the difference? Because the emphasis made by the First Circuit, you're right, it's an awfully broad opinion, but at least on this point, they are saying fast-track and crack powder disparity are just the same. It's Congress or somebody else coming in and pushing the Sentencing Commission to do something they wouldn't otherwise do. Therefore, policy disagreements are an okay basis. I think the purpose behind the two are quite different. In terms of policy disagreements with the crack cocaine guidelines, I think there's an emphasis on trying to remedy a disparity that is sort of unmoored from individual culpability, for example, and to try to mitigate the disparity in sentences in that context where the fast-track policy is quite different. It's about conserving judicial resources and prosecutorial resources in a setting, in a context where those resources are incredibly strained. Thank you very much. Go ahead. Do you have a question? No, that's fine. I'll skip it. I read last one, but do you want to do it? No, that's fine. Thank you. We'll give it a follow-up. Thank you. I didn't know if you had a follow-up. Thank you. Your Honor, we believe that issue here is this matter should be remanded to the district court. You'll have to pick up the mic. It should be remanded to the district court to allow the district court to consider this fast-track issue as a third-step factor. Which is what Judge Ambrose asked you. Yes, and I would also note that it is both a 35- and a 6-issue. If I was called, Judge Ambrose would say a softball. I've been doing a lot of softball lately, Judge. And you should be Ryan Howard and hit it out of the park. The 3553A, that this is a 3553A factor both as an A1 issue as well as an A6 issue. Doesn't it have to be unwarranted to be 3553A factor? No, to be A6, I guess it has to be unwarranted. A1 would simply do the nature and circumstance of the offense and the history and the characteristics of the defendant. So the nature and circumstance of the offense. Well, what does a fast-track not have to do with the particular defendant? Well, of the offense, and in general, the offense of illegal reentry and the fact that we have this ad hoc, completely irrational implementation of the fast-track program. The government asserts that Congress intended that. Wait a minute. What did you say? Why is it unwarranted? The assumption here is that the government is asserting that Congress directed that this fast-track was to only be implemented in certain districts. And it did that because certain districts had a much higher incidence of reentry and the same kind of case, and Congress wanted to move the cases through. Congress has the right to do that. Congress has the right to do that. But in leaving it up to the fast-track programs are not, in fact, limited to those districts. We see the fast-track program in Washington, Oregon, Idaho, Nebraska, and we don't see it in places. Actually, Nebraska does have a major problem, believe it or not, because of poultry plants bringing in immigrants. And as clearly does the District of New Jersey, as this matter, and the Eastern District of Pennsylvania, that New Jersey is similar to Oregon, a state where there's ports of call but yet does not have a direct border. That's an attorney general decision as to which districts get fast-track or not, right? That's correct. I mean, that's an executive decision. Should the judiciary step in and say we don't like that? The judiciary is directed under, by Congress through both Kimbrough and, excuse me, the Supreme Court has directed that the judiciary's duty under 3553A, that the court must consider 3553A. Actually, just as a fact, if I understand correctly, fast-track really started in the Southern District of California prior to Congress even getting involved. Correct. Congress then said the attorney general has the authority to allow districts to have fast-track. The attorney general then authorized 20 districts to have fast-track, and the districts themselves, the district judges, and 16 of them made the decision that they would go ahead and allow that fast-track disparity to exist. So it looks like it really comes down in the end to the district judges being able to sign on or not sign on. Right, and I would submit to the court that in this particular case, the district court was precluded from considering that, and that was the ruling by the district court that it was prohibited from considering it as a matter of law, and we don't believe that that is correct. Thank you. Thank you very much.